UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
ROYAL & SUN ALLIANCE INSURANCE, PLC,  :
                                      :
                    Plaintiff,        :      12 Civ. 97 (DLC)
                                      :
          -v-                         :      OPINION & ORDER
                                      :
SERVICE TRANSFER, INC.,               :
                                      :
                    Defendant.        :
                                      :
--------------------------------------X

Appearances:

For plaintiff:

David T. Maloof
Thomas M. Eagan
Maloof Browne & Eagan LLC
411 Theodore Fremd Avenue, Suite 190
Rye, NY 10580

For defendant:

George W. Wright
Narinder S. Parmar
George W. Wright & Associates, LLC
88 Pine Street, 7th floor
New York, NY 10005


DENISE COTE, District Judge:

     Defendant Service Transfer, Inc. ("STI") moves for partial

summary judgment in this maritime case, arguing that this

action, filed by plaintiff Royal & Sun Alliance Insurance, PLC

("RSA"), acting as subrogee for a shipper, is governed by the

United States Shipping Act of 1984, 46 U.S.C. § 40101 et seq.,
and the United States Carriage of Goods by Sea Act of 1936, 46
U.S.C. § 1300 et seq. ("COGSA").  The parties dispute whether
the domestic leg of an international transportation contract is
governed by COGSA or the Carmack Amendment, 46 U.S.C. § 14706.
For the following reasons, the defendant's motion is granted;
COGSA will be applied to the journey at issue here.


Background

     STI is an interstate motor carrier which provides services
to ocean carrier American President Lines, Ltd. ("APL").  In
April 2011, BioLife Plasma Services LLC ("BioLife") delivered a
shipment of frozen human plasma to STI at a warehouse in
Erlanger, Kentucky, operated by RxCrossroads Acquisition Company
("RxCrossroads/MDI").  Rx Crossroads/MDI acts as the warehousing
and distribution logistics contractor for Baxter Healthcare
Corporation ("Baxter").  It was intended that STI would
transport and deliver the plasma from Kentucky to APL in
Norfolk, Virginia for further shipment by sea to Bremerhaven,
Germany en route to its ultimate destination in Vienna, Austria.
BioLife is a part of Baxter, and the plasma was to be delivered
to a European affiliate of Baxter, Baxter Healthcare
Switzerland.

While driving between Kentucky and Virginia, STI's truck driver fell asleep and drove the truck off the road. The truck burned and the shipment was lost. RSA commenced this action as Baxter's subrogee.

The shipment of plasma was subject to a sea waybill between Baxter and APL ("Waybill").[1] The Waybill provided for the through intermodal transport of the goods from Erlanger, Kentucky to Vienna, Austria.[2] For the purposes of the Waybill, APL is the "Carrier" and Baxter is the "Merchant" shipper. STI acted on this shipment as a sub-contractor of APL. As such, STI is not a party to the Waybill but seeks protection under its terms.

---

[1] A sea waybill "typically functions in the same way as a bill of lading, except that it is non-negotiable." Mitsui Sumitomo Ins. Co., Ltd. v. Evergreen Marine Corp., 621 F.3d 215, 216 n.1 (2d Cir. 2010).

[2] "Intermodal transport, also known as multimodal transport, is transport consisting of multiple modes of transport -- that is, more than one of truck, rail, sea, and air." Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc., 612 F.3d 138, 141 n.4 (2d Cir. 2010). Plaintiffs dispute the characterization of the shipment as "through." "A through bill of lading covers both the ocean and inland portions of the transport in a single document." Kawasaki Kisen Kaisha Ltd. V. Regal-Beloit Corp., 130 S.Ct 2433, 2439 (2010). The APL Bill of Lading designates the "Place of Receipt" as Erlanger, the "Port of Loading" as Norfolk, the "Port of Discharge" as Bremerhaven, and the "Place of Delivery" as Vienna. The Waybill is, thus, a through waybill.

The Waybill included a Clause Paramount and a Himalaya Clause.  The clauses in relevant part extend APL's liability under COGSA to the period prior to loading goods onto APL's ocean vessel and permit APL's subcontractors to invoke COGSA's liability limitations, respectively.  The parties do not dispute that the Hague Rules as referenced in the Waybill include their 1936 adaptations in COGSA.

When STI's truck driver picked up the shipment from RxCrossroads/MDI on April 11, 2011, the STI driver signed an RxCrossroads/MDI Uniform Straight Bill of Lading dated April 9, 2011 ("Bill of Lading").  The Bill of Lading states that the subject shipment is "From" MDI in Kentucky "To" Baxter AG in Vienna, Austria.

RSA commenced this action on January 6, 2012.  APL was not served and has not appeared in this case.  On August 2, STI filed a motion for partial summary judgment on the discrete issue of whether COGSA governs the present action.  STI argues that, after benefitting from APL's "all-in" door-to-door rates and the corresponding limitations on APL's liability under COGSA, Baxter's subrogee RSA is now disregarding its Waybill and pursuing a direct, unlimited liability action against STI, a party with whom it was not in privity.  RSA opposes the motion, arguing that the Carmack Amendment governs this case, and not COGSA.

Discussion

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party. Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008); see also Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 456 (1992). Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).

COGSA governs "the terms of bills of lading issued by ocean carriers engaged in foreign trade." Regal-Beloit, 130 S.Ct at 2440; see also 46 U.S.C. § 30701 at Sec. 13. Although COGSA "only applies to shipments from United States ports to ports of foreign countries and vice versa . . . [it] allows parties the option of extending certain COGSA terms by contract to cover the

5

entire period in which the goods would be under a carrier's responsibility, including a period of inland transport." Regal-Beloit, 130 S.Ct at 2440 (citation omitted).

The Carmack Amdendment, by contrast, governs the terms of bills of lading issued by domestic motor carriers providing transportation or service subject to the jurisdiction of the Surface Transportation Board ("STB"). See 49 U.S.C. § 14706(a)(1).[3] It imposes liability for damage caused during motor carriage under the STB's jurisdiction against

> (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.

---

[3] The STB has jurisdiction over "transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier --

> (1) between a place in -- (A) a State and a place in another State; (B) a State and another place in the same State through another State; (C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States; (D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or (E) the United States and a place in a foreign country to the extent the transportation is in the United States; and
>
> (2) in a reservation under the exclusive jurisdiction of the United States or on a public highway."

49 U.S.C. § 13501.

Id. (emphasis supplied).   "Carmack's purpose is to relieve cargo owners of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods."   Regal-Beloit, 130 S.Ct at 2441. Parties may agree to waive the rights and remedies provided under the Carmack Amendment by express waiver.   See 49 U.S.C. § 14101(b)(1).

The clear terms of the Waybill indicate that COGSA governs this action.   The Ocean Freight Services Agreement between Baxter and APL provides that liability for any freight claims shall be determined pursuant to the terms and conditions of the Waybill.   The Waybill specifies that APL is responsible for the performance of the Carriage from the Place of Receipt . . . to the . . . Place of Delivery" of the combined carriage indicated on the Waybill, namely the shipment of goods from Erlanger, Kentucky to Vienna, Austria via the ports of Norfolk, Virginia and Bremerhaven, Germany.   It contains a Clause Paramount which specifically extends COGSA's application to the inland portion of the shipment by stating in relevant part that, "[p]rior to loading onto the [overseas] Vessel . . . the Carrier's liability shall be governed under the Hague Rules," which the parties do not dispute includes COGSA.   The Himalaya Clause extends COGSA's application to STI as APL's sub-contractor on the Waybill.   STI did not issue its own bill of lading and it had no privity with

7

Baxter.  Indeed, no bill of lading was issued by any party to cover solely the domestic leg of this international shipment. Thus, claims arising during STI's transport of the goods from the Waybill's "place of receipt," Erlanger, Kentucky, to the "port of loading," Norfolk, Virginia, are covered by COGSA.

RSA makes two principal arguments in support of its theory that the Carmack Amendment, not COGSA, applies in this action. Both arguments fail.

As a preliminary matter, the Carmack Amendment by its terms does not apply to non-receiving carriers transporting goods as part of a shipment between the United States and a non-adjacent foreign country under a through bill of lading.  See 49 U.S.C. § 14706(a)(1); Missouri Pacific R.R. Co. v. Porter, 273 U.S. 341, 345 (1927); see also Regal-Beloit, 130 S.Ct at 2445 (finding that the STB's jurisdiction is not coextensive with Carmack's coverage).  At most Carmack could govern the domestic portion of a shipment from the United States to an adjacent foreign country.  That is not the situation here.

RSA primarily relies on the Supreme Court's decision in Regal-Beloit to argue that STI acted as a "receiving carrier" subject to the Carmack Amendment.[4]  Regal-Beloit, which addressed

---

[4] RSA refers to several inapposite decisions in support of this theory, including: a decision abrogated by the Supreme Court, Sompo Japan Ins. Co. of Am. v. Union Pacific R.R. Co., 456 F.3d 54 (2d Cir. 2006), abrogated by Regal-Beloit, 130 S.Ct 2433; and

an international shipment coming into the United States, chose
not to address the status of shipments received in the United
States for export.  Regal-Beloit, 130 S.Ct at 2444.
Nonetheless, its reasoning supports the application of COGSA
here.

In Regal-Beloit, the Court examined whether COGSA or the
Carmack Amendment governed the domestic rail portion of an
intermodal maritime shipment that originated abroad and was
performed pursuant to a single through bill of lading.  It held
that

> Carmack does not apply if the property is received at an
> overseas location under a through bill that covers the
> transport into an inland location in the United States.  In
> such a case, there is no receiving rail carrier that
> "receives" the property for domestic rail transportation,
> and thus no carrier that must issue a Carmack-compliant
> bill of lading.

Id. (citation omitted).  It further held that "[t]he decisive
question is not whether the rail carrier in fact issued a
Carmack bill but rather whether that carrier was required to
issue a bill by Carmack's [terms]."  Id.

In reaching this conclusion, the Court reasoned that
"[a]pplying Carmack's provisions to international import
shipping transport would . . . undermine the purpose of COGSA,

---

a Ninth Circuit decision in which, as the plaintiff admits, no
intermodal bill of lading appears to have been issued, Smallwood
v. Allied Van Lines, Inc., 660 F.3d 1115 (9th Cir. 2011).

to facilitate efficient contracting in contracts for carriage by the sea." Id. at 2447 (citation omitted).  It further found that "[Congress] has not imposed Carmack's regime, textually and historically limited to the carriage of goods received for domestic rail transport, onto what are essentially maritime contracts." Id. at 2449 (citation omitted).  Regal-Beloit applies to cases involving the Carmack Amendment's motor carriage provisions, Royal & Sun, 612 F.3d at 145, and "[t]he policy arguments made by the Court are equally applicable" in cases of both motor and rail carriage.  Id.

Regal-Beloit thus established a two-part test for determining whether the Carmack Amendment applies to a particular domestic transport of goods.  First, the carrier must provide transportation or service "subject to the jurisdiction of the [STB]."  Second, the carrier must "receive the property" for transportation under the STB's jurisdiction over domestic motor transport.  Mitsui, 621 F.3d at 218 (citation omitted).

The second prong of this test precludes application of the Carmack Amendment here even though it is undisputed that STI acted as the first carrier to transport the plasma from Kentucky.  Being the first carrier does not necessarily make STI the "receiving" carrier for the purposes of Carmack coverage. Instead, the "receiving" carrier is the "principal" party to the contract governing the subject shipment, Missouri, Kansas &

Texas Ry. Co. of Texas v. Ward, 244 U.S. 383, 388 (1917), and is "responsible for the whole carriage." Id. at 387.  In other words, it is the carrier which holds "unity of responsibility for the transportation to destination." Mexican Light & Power Co. v. Texas Mexican Ry. Co., 331 U.S. 731, 734 (1947).  "A carrier does not become a receiving carrier simply by accepting goods for further transport from another carrier in the middle of an international shipment under a through bill." Regal-Beloit, 130 S.Ct at 2445; see also R.R. Retirement Bd. v. Alton R. Co., 295 U.S. 330, 359 (1935) ("initial carriers in fact enter into contracts for delivery of goods beyond their own lines and make through or joint rates over independent lines").

Here, it is undisputed that STI was not the carrier responsible for the entire course of the shipment.  Baxter signed the single Waybill and paid APL a single "all-in" through rate to handle the shipment of goods from Kentucky through to its final destination in Austria.[5]  Therefore, STI did not function as a "receiving" carrier, and the Carmack Amendment does not apply.

This outcome is consistent with the Supreme Court's emphasis on efficiency in international maritime trade.  See Regal-Beloit, 130 S.Ct at 2447-48; Norfolk Southern Ry. Co. v.

---

[5] The Services Agreement between Baxter and APL provides that the rates included in the Waybill "are considered all-in rates."

<u>Kirby</u>, 543 U.S. 14, 25 (2004) ("[T]he fundamental interest giving rise to maritime jurisdiction is the protection of maritime <u>commerce</u>." (citation omitted)).  The Carmack Amendment was intended to "mak[e] the receiving and delivering carriers liable under a single, initial bill of lading for damage caused by any carrier." <u>Regal-Beloit</u>, 130 S.Ct at 2443.  As the Court explained,

> [i]f a carrier . . . which acts as a connecting or delivering carrier during an international through shipment, was, counterintuitively, a receiving carrier under Carmack, this would in effect outlaw through shipments under a single bill of lading . . . because a carriage like the one in the present case would require two bills of lading: one that the overseas carrier . . . issues to the cargo owners under COGSA, and a second one that the first domestic . . . carrier . . . issues to the overseas carrier under Carmack.

<u>Id</u>. at 2445.  The Court saw "no reason to read COGSA and Carmack to outlaw this efficient mode of international shipping," which allows cargo owners to contract for transportation across oceans and to inland destinations in a single transaction.  <u>Id</u>. Although the Supreme Court has not addressed the present circumstances, where goods are received at a point in the United States for export, <u>see id</u>. at 2444, the same reasoning applies to those contracts which create a single transaction for shipments across inland segments to overseas destinations.

The second argument RSA offers is that the Bill of Lading acts as a "de facto . . . second interstate domestic bill of lading," which extends the Carmack Amendment's coverage to STI. This theory also fails, for two reasons.  First, the Bill of Lading indicates that it involves a shipment of goods "from" Kentucky "to" Vienna, and not a domestic shipment.  Second, even assuming that the Bill of Lading was intended to cover the interstate shipment between Kentucky and Virginia, the Carmack Amendment still would not apply to STI.  When a non-receiving carrier signs a second bill of lading in connection with a through shipment, "Carmack makes any subsequent bill of lading void unless the so-called second bill of lading represents the initiation of a new shipment."  Id. at 2443 (citation omitted). A second bill of lading is thus invalid "unless the connecting carrier has received a consideration for the bill of lading in addition to that which flowed under the bill of lading issued by the initiating carrier."  Mexican Light, 331 U.S. at 734.

RSA concedes that STI did not receive freight payments directly from Baxter.  RSA presents no evidence that any other form of consideration was exchanged between STI and RxCrossroads/MDI or STI and Baxter separate from any consideration received by STI as a sub-contractor on the Waybill.  In light of the above, COGSA governs the claims at issue in this action, not the Carmack Amendment.

CONCLUSION

Defendant's August 2, 2012 motion for partial summary judgment is granted.


SO ORDERED:

Dated:    New York, New York
          December 4, 2012

_____
          DENISE COTE
   United States District Judge